Eastern District of Kentucky
FILED
MAY 18 2021
AT FRANKFORT
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF KENTUCKY
### FRANKFORT DIVISION

| | |
|---|---|
| United States of America, *ex rel.* Jerry Sparkman and Pamela Justice<br><br>Plaintiff,<br><br>v.<br><br>Oxygen Plus, Inc.<br>9350 US Highway 23 South<br>Stanville, KY 41639<br><br>Judee Mann fka Judee Hale<br>9350 US Highway 23 South<br>Stanville, KY 41639<br><br>-and-<br><br>Ronald Mann<br>9350 US Highway 23 South<br>Stanville, KY 41639<br><br>Best Practice Family Health, PLLC<br><br>**SERVE**:<br>Ronald F. Mann, Registered Agent<br>1358 Watergap Road<br>Prestonsburg, KY 41653<br><br>Defendants. | Cause No. 3:21-cv-22<br><br>**COMPLAINT**<br><br>(To be filed *in camera* and under seal)<br><br>Jury Trial Demanded |

\* \* \* \* \*

1.  Relators Jerry Sparkman ("*Sparkman*") and Pamela Justice ("*Justice*")(collectively, the "*Relators*"), bring this Complaint on behalf of the United States of America against the defendants, Oxygen Plus, Inc., Judee Mann, Ronald Mann and Best Practice Family Health, PLLC ("*Defendants*"), to recover damages for

violations of the False Claims Act, 31 U.S.C. § 3729 *et seq.* The defendants have conspired to commit and engaged in long-standing and pervasive fraudulent billing to federal health care programs, resulting in millions of dollars in improper claims.

## JURISDICTION AND VENUE

2.      This is an action to recover damages and civil penalties arising out of false claims presented by Defendants to the United States. The action arises under the provisions of Section 3729 of Title 31 of the United States Code, *et seq.*, the False Claims Act (the "***Act***"), which provides that the United States District Court shall have jurisdiction of actions brought under the Act.

3.      The Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 31 U.S.C. § 3732.

4.      Section 3732(a) of the Act provides that "[a]ny action under 3730 may be brought in any judicial district in which the defendant or, in the case of multiple defendants, any one defendant can be found, resides, transacts business, or in which any act proscribed by section 3729 occurred." An act proscribed by section 3729 occurred in the Eastern District of Kentucky.

5.      Under the Act, this Complaint is to be filed *in camera* and remain under seal for a period of at least sixty days and shall not be served on the Defendants until the Court so orders. The United States may elect to intervene and proceed with the action within sixty days after it receives the complaint, material evidence, and any other necessary information.

6. As required by the Act, 31 U.S.C. § 3730(b)(2), Relators have provided to the Attorney General of the United States and to the United States Attorney for the Eastern District of Kentucky, simultaneously with the filing of this Complaint, a statement of substantially all material evidence and information related to this Complaint. This disclosure statement is supported by evidence establishing the Defendants' submission of false claims to the government.

## THE PARTIES

7. Relator Jerry Sparkman is an individual residing in Stanville, Kentucky. He holds an associate's degree from the California College of Health Science in respiratory therapy and has been a licensed respiratory therapist in the Commonwealth of Kentucky since 1994. He was formerly employed by Defendant, Oxygen Plus, Inc., as an office manager.

8. Relator Pamela Justice, the other relator herein, is an individual residing in Langley, Kentucky. She holds an associate's degree in accounting from the Prestonsburg Community College. She was formerly employed by Defendant, Oxygen Plus, Inc., as a bookkeeper.

9. Defendant Oxygen Plus, Inc. ("*Oxygen Plus*"), is a Kentucky corporation organized in 2005 by Defendant Judee Mann, formerly known as Judee Hale. According to the annual report Ms. Mann filed on February 13, 2020 in the office of Kentucky's secretary of state, Oxygen Plus's sole officer and registered agent is "Judee Hale." Oxygen Plus, Inc. provides durable medical equipment and supplies, including ventilators, diabetic shoes and inserts, and oxygen to Medicare and Medicaid

3

beneficiaries in the Commonwealth of Kentucky and West Virginia. Its principal office is located at 9350 U.S. Highway 23 South in Stanville, Floyd County, Kentucky.

10. Defendant Judee Mann, formerly known as Judee Hale, is an individual and resident of Floyd County, Kentucky, residing at 1033 Kentucky Route 797, Harold, Floyd County, Kentucky 41635. Ms. Mann is an owner and sole officer of Defendant Oxygen Plus, Inc., the vice president of Best Value Medical, Inc., and the spouse of Defendant Ronald Mann.

11. Defendant Best Practice Family Health, PLLC is a Kentucky limited liability company, having a principal office at 1358 Watergap Road, Prestonsburg, KY 41653. Defendant Practices Health, PLLC is a health services clinic owned and managed by Defendant Ronald Mann and is believed to be the alter ego of Ronald Mann.

12. At all pertinent times herein, Judee Hall was married to Defendant Ronald F. Mann.

13. Defendant Ronald F. Mann, M.D., is a Kentucky-licensed medical doctor and practicing physician residing at 1033 Kentucky Route 797, Harold, Floyd County, Kentucky 41635. Dr. Mann is an owner and president of Best Value Medical, Inc., and a member of Defendant Best Practice Family Health, PLLC.

14. At all times relevant to this Complaint, Oxygen Plus, Inc. provided and billed for non-invasive respiratory assistive devices, oxygen, diabetic shoes and inserts, and prosthetic breasts and bras to participants in the Medicare, Medicaid, and Tricare programs.


## FACTS

### A. Federal Reimbursement for Health Care Claims.

15. The United States pays for durable medical equipment, including the monthly rental expenses for ventilators, for the elderly and the disabled through Part B of the Medicare Program, covering eighty percent (80%) of the cost.

16. Non-invasive pressure support ventilators, such as the Breas Vivo 50, as well as diabetic shoes and inserts and prosthetic breasts and bras, supplied to Medicare participants by Oxygen Plus, Inc., meet the definition of "durable medical equipment" covered by Medicare under 42 C.F.R. § 414.202.

17. According to a September 2016 report published by the Office of the Inspector General for the U.S. Department of Health and Human Services,[1] Medicare paid eighty-five times more claims for noninvasive ventilators in 2015 than in 2009. According to the report, the dramatic escalation in billing may have been attributable to suppliers billing Medicare for ventilators when a less expensive device, such as a CPAP or RAD device, was indicated. The report cited two prepayment reviews which resulted in the denial of ninety-percent of claims for noninvasive pressure support ventilators.

18. As a condition for payment, Section 6407 of the Affordable Care Act, codified at 42 U.S.C. § 1395m, requires a physician to document that a qualified healthcare professional has had a face-to-face encounter examination with a beneficiary in

---

[1] HHS OIG Data Brief, September 2016, OEI-12-15-00370

the six (6) months prior to the written order for certain items of durable medical equipment, including non-invasive ventilators and oxygen.

19. At all relevant times, Centers for Medicare and Medicaid Services ("*CMS*") administered Medicare Part B claims.

20. In administering the Medicare program, CMS retains private contractors to act as fiscal intermediaries or agents of CMS and, pursuant to written agreements, make payments on behalf of the program's beneficiaries. In Kentucky, and at pertinent times herein, CMS retained CGS Administrators, LLC ("*CGS*") to administer reimbursement claims for durable medical equipment ("*DME*"). CGS and various other fiscal intermediaries processed claims that were submitted by Defendant Oxygen Plus, Inc. for durable medical equipment purportedly provided to Medicare participants.

21. CMS and its fiscal intermediaries issue rules that providers must follow in order to bill for durable medical equipment and services provided to Medicare participants. Those rules require providers to bill only if they have complied with the applicable rules and they can document their compliance.

22. At all times relevant to this Complaint, Oxygen Plus, Inc. was an authorized Medicare provider and billed Medicare for durable medical equipment it provided to Medicare participants.

23. As an authorized Medicare provider, Oxygen Plus, Inc. entered a Medicare provider agreement, as a prerequisite to enrolling in and receiving payment from the Medicare program. In that provider agreement, Oxygen Plus, Inc. expressly certified the following:

a. I am familiar with and agree to abide by the Medicare or other federal health care program laws, regulations and program instructions that apply to my provider/supplier type. . . . I understand that payment of a claim by Medicare or other federal health care programs is conditioned on the claim and the underlying transaction complying with such laws, regulations and program instructions (including the anti-kickback statute and the Stark law), and on a provider/supplier being in compliance with any applicable conditions of participation in any federal health care program.

24. Upon information and belief, in addition to the provider agreements, Oxygen Plus, Inc. also completed an Electronic Data Interchange ("EDI") Enrollment Form in order to bill Medicare electronically.

25. In the EDI Enrollment Form, the provider agrees to "be responsible for all Medicare claims submitted to CMS by itself, its employees, or its agents," and that it would "submit claims that are accurate, complete and truthful." Through the EDI Enrollment Form, the provider also acknowledges "that all claims will be paid from Federal funds, that the submission of such claims is a claim for payment under the Medicare program, and that anyone who misrepresents or falsifies or causes to be misrepresented or falsified any record or other information relating to that claim as required by this Agreement may, upon conviction be subject to a fine and/or imprisonment under applicable Federal law."

26. In addition, Oxygen Plus, Inc. is required each year to submit an annual cost report to a fiscal intermediary. The signature page of the cost report for the years in question (which are typically submitted about six months after the end of the year at issue) requires the signing officer to certify that "I am familiar with the laws and regulations regarding the provision of health care services, and that the services identified in this cost report were provided in compliance with such laws and regulations." The

7

signee must also certify familiarity with the statement that "misrepresentation or falsification of any information contained in the cost report may be punishable by criminal, civil or administrative action, fine and/or imprisonment under federal law."

27. Medicaid is a joint federal-state program funded under Title XIX of the Social Security Act. Under this program, the United States and the Commonwealth of Kentucky pay for certain medical care and equipment for the disabled and those who meet certain income requirements. The Kentucky Cabinet for Health and Family Services' Department of Medicaid Services ("*DMS*"), administers the Medicaid program in Kentucky.

28. In addition, the United States provides pays for medical care for military personnel, military retirees, and their dependents through the Tricare Program.

**B.     Overview of Defendants' false claims.**

29. On February 14, 2015, Defendants Judee Mann and Ronald Mann married each other in Johnson County, Kentucky.

30. Shortly thereafter, from approximately June 1, 2015 and continuing therefrom to the present (the "*relevant period*"), Defendants engaged in a scheme to defraud the United States in the submission of the Medicare and Kentucky Medicaid claims through material misrepresentations, unlawful solicitation of Medicare beneficiaries, and self-referrals of Medicare beneficiaries.

31. During the relevant period, the Defendants, by and through Defendant Oxygen Plus, Inc., presented numerous claims against Medicare Part B and Kentucky

8

Medicaid, programs funded in whole or in part by the United States, when the Defendants knew that the claims were false or fraudulent.

32. In the late summer of 2016, Dr. Mann purchased ten ventilators, Breas Vivo 50s, at $6,000 per unit, for a total cost of $60,000. Dr. Mann used his personal American Express card to make the purchase.

33. Thereafter, Dr. Mann leased these ventilators to Oxygen Plus via an oral agreement or understanding not memorialized in writing.

34. Dr. Mann thereafter referred patients under his care, for whom he had prescribed a ventilator and/or other durable medical equipment, to Oxygen Plus to acquire the needed durable medical equipment.

35. The Defendants were unjustly enriched by the improper payments from the Medicare and Kentucky Medicaid programs. The Defendants should be required to account for and disgorge their unlawful profits.

### C. Solicitation of Medicare Beneficiaries

36. During the relevant period, Defendants solicited Medicare and Medicaid beneficiaries for home ventilator rentals, despite the lack of medical necessity, over the repeated protestations of Relator Sparkman and/or other healthcare professionals. Defendants targeted many of these individuals because they suffered from chronic obstructive pulmonary disease ("*COPD*") and likely qualified for a less costly respiratory assistive device such as a bilevel constant positive airway pressure ("*BIPAP*") device.

19. Dr. Mann pressured employees of Oxygen Plus to solicit Oxygen Plus's existing Medicare and Medicaid beneficiary patients to be supplied with noninvasive, home ventilators.

37. In early 2019, not long after commencing his employment, Relator Sparkman discovered that Oxygen Plus engaged in unscrupulous and fraudulent billings practices, noting that during his visits of patients' homes, ventilators often sat unused. Yet, Oxygen Plus continued to bill Medicare and Kentucky Medicaid for these devices.

38. Oxygen Plus used a six-question form captioned "Questionable Vent Patients" to find and solicit existing, non-ventilated Medicare and Kentucky Medicaid customers for ventilator use. Once a candidate was selected from Oxygen Plus's existing customer list, the Defendants would pressure one or more healthcare providers to write an order for a ventilator for that patient. On at least one occasion in July 2018, Dr. Mann wrote an order for a ventilator for a Medicare beneficiary and Oxygen Plus customer, R.C.

39. On August 15, 2018, Dana Turee, a respiratory therapist and former employee of Oxygen Plus, completed such a Questionable Vent Patient questionnaire for Medicare beneficiary R.E., MBI xxxxx596A, and requested his medical records, having encouraged the patient's primary care provider to prescribe one the previous day, August 14, 2018. The provider ultimately refused to prescribe the ventilator, but others obliged, even without first seeing and evaluating the patient.

40. During the relevant period, Dr. Mann paid a bonus to at least one employee of Oxygen Plus based on the number of new Medicare and Medicaid beneficiaries added to Oxygen Plus's customer list.

41. On or about October 16, 2019, in response to Relator Sparkman's protestations over what he believed was the medically unnecessary use of non-invasive ventilators (NIVs), Defendant Dr. Mann sent a text message to Relator Sparkman, which read as follows:

> Researching data on death due to chronic lung disease Kentucky is number two in nation Second only to Arkansas and ahead of WVA. And looking at counties in Kentucky the big sandy is the epicenter. Studying present trends with Medicare they are aware of the increased utilization that is taking place. So Oxygen Plus will move its resources to tapping into this need. Anyone disagrees with this information has not done their home work and is ill informed We will continue to provide c-paps but we will not be spending advertising resources for this market. An anticipated and expected growth in NIV for the remainder of this year is 40 and by the end of 2020 100. Let's move ahead and not live in the past.

42. Relator Sparkman understood the text message as a directive to supply at least forty patients with non-invasive ventilators, regardless of medical necessity.

43. Between approximately June 1, 2015 and the present, Oxygen Plus billed Medicare and Kentucky Medicaid programs millions of dollars through CGS, which accounted for the lion's share of its gross revenues.

### D.  Self-referrals of Medicare Beneficiaries

44. During the relevant period, and continuing therefrom until the present, Dr. Mann referred his patients to Oxygen Plus, Inc. for their durable medical equipment needs, including but not limited to ventilators. As of February 6, 2020, Dr. Mann had referred at least nine-one (91) of his patients to Oxygen Plus, the vast majority of whom were Medicare or Medicaid beneficiaries.

45. In the summer of 2016, Dr. Mann, through his company Best Practice Family Health PLLC, offered to rent the ventilators to Oxygen Plus, Inc., for $300 per

unit per month, which Oxygen Plus, Inc., through Judee Mann, agreed to pay. There was no written agreement memorializing the terms of this financial arrangement, nor has there have ever been such a written agreement.

46. Beginning in late summer or early fall of 2016 and continuing periodically thereafter through the present, Oxygen Plus, Inc. paid Best Practice Family Health PLLC for the rental of ventilators. For instance, in calendar year 2019, Oxygen Plus paid $68,000 to Best Practice Family Health PLLC for rentals of ventilators. Dr. Mann, individually or through his company, continued to purchase ventilators and rent them to Oxygen Plus.

47. From around mid-2016 through the present, Oxygen Plus, Inc., supplied Medicare participants with the rented ventilators, receiving monthly reimbursements from Medicare of $1,200 per unit, per month.

48. On or about March 14, 2019, Ms. Mann, on behalf of Oxygen Plus, Inc., falsely certified in writing to CGS Administrators, LLC that she "does not own any other medical entities" and that "none of [her] relatives own any medical entities." Ms. Mann knew at the time that her statement was demonstrably false because she was married to Defendant Dr. Donald Mann, who owned a private medical clinic, Best Practice Family Health, PLLC.

### E. Billing for medically-unnecessary ventilators

49. In January of 2019 and thereafter, relator Sparkman uncovered a long-standing and pervasive scheme perpetuated by the Defendants to defraud Medicare and Kentucky Medicaid whereby Oxygen Plus would bill Medicare and/or Kentucky

Medicaid for unused and/or medically-unnecessary home non-invasive ventilators. In 2019 and early 2020, Relator Sparkman noticed during home visits that Medicare and Medicaid beneficiaries did not need a ventilator or were not using the ventilator as prescribed. Relator Sparkman further observed that in many cases, a patient's chart lacked adequate documentation supporting the medical necessity for a ventilator. In most cases, the patient had not been seen face-to-face by the medical professional who prescribed the ventilator. In some cases, the prescriber's order lacked setting information, such as volume, etc., which is needed for the appropriate use of the ventilator.

50. More specifically, WellCare beneficiary D.F., ID xxxx3156, was prescribed a ventilator on October 22, 2018 for a lifetime duration by Dr. Kevin B. Johnson, but the order lacked setting information. On information, Dr. Johnson did not examine D.F. Later, another provider, Martha Stephens, P.A-C., amended the ventilator order to include setting information, but the amended order lacked duration information. Ms. Stephens also did not examine D.F. D.F.'s medical chart did not support a diagnosis of respiratory failure.

51. As of May 16, 2019, D.F. had used the ventilator for only 119 days out of 196, and of those was compliant for just 17, or 9% of the time. Nevertheless, Medicare, through WellCare, paid monthly rental expenses of $1,200 to Oxygen Plus from November 2, 2018 through at least May 2019.

52. On or about October 26, 2019, Oxygen Plus billed $1,200 to WellCare as monthly rent for D.F.'s ventilator for the period October 31, 2018 to October 30, 2019, using code E0466, knowing D.F. was non-compliant during that period.

53. On or about October 4, 2018, Medicare beneficiary R.M. of McDowell, Kentucky was prescribed a ventilator for a lifetime duration during sleep and as needed by Dr. Yousof Elgaried. As of May 28, 2019, R.M. had used the ventilator for only 26 out of 233 days, or 11% of the time. R.M.'s medical chart did not support a diagnosis of respiratory failure.

54. On or about May 30, 2018, Medicare beneficiary J.Y. of Banner, Kentucky was prescribed a ventilator by Dr. Ahsen Ali Butt for a lifetime duration to use as needed. As of May 29, 2019, J.Y. had used the ventilator for 16 days out of 360, or 16% of the time. J.Y.'s medical chart did not support a diagnosis of respiratory failure.

55. On or about October 19, 2018, Medicare beneficiary C.S. of Pikeville, Kentucky was prescribed a ventilator by Martha Stephens, P.A-C., for a lifetime duration during sleep and as needed, without specified settings. As of November 5, 2017, S.C. used the ventilator for only 3 days out of 403, or 3 percent of the time. C.S.'s medical chart did not support a diagnosis of respiratory failure.

56. On July 24, 2018, Dr. Mann prescribed a ventilator to Medicare beneficiary R.C. for lifetime duration, during sleep and as needed, without specifying setting information. As of November 7, 2018, R.C. has only used the ventilator for 50 days out of 434, or 12% of the time. R.C.'s medical chart did not support a diagnosis of respiratory failure.

57. Nevertheless, Oxygen Plus, Inc. continued to bill and receive payments from Medicare and Medicaid for the monthly rental of these ventilators and continues to bill for some through the present.

58. During the relevant period, Oxygen Plus also supplied Medicare and Medicaid beneficiaries with diabetic shoes and/or inserts without a proper fitting and then falsified documents to perpetuate and cover up the fraud.

59. During the relevant period, Oxygen Plus also sold diabetic shoes and inserts to Medicare and Medicaid beneficiaries without properly fitting the individuals for the shoes and/or inserts. Between April 9, 2019 and May 2019 and between September 30, 2019 and March 2020, Oxygen Plus did not have a certified shoe fitter on staff but continued to sell diabetic shoes and inserts to Medicare and Medicaid beneficiaries.

60. Additionally, in most cases, the diabetic shoe insert patients were not properly fitted by a certified shoe fitter.

61. Then, in March 2020, Ms. Mann reached an agreement with Darrell Williams, a certified diabetic shoe fitter, whereby Mr. Williams would sign false shoe fitting certifications in exchange for $1,500 per month.

## CLAIMS

### Count I
### Violation of the False Claims Act

62. Defendants were not entitled to payments from the United States for the claims that they submitted, or caused to be submitted, as described above, because such claims were false and fraudulent and, as such, payment of these claims resulted in a financial loss to the United States of America.

63. Pursuant to the False Claims Act, Defendants is liable to the United States for statutory damages as allowed by law and civil penalties for each of these false or fraudulent claims in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, the United States of America, demands judgment against Defendants as follows:

    a.    Judgment on Count I against Defendants and in favor of the United States, and a determination by the Court for an appropriate award of statutory damages allowed by law, specifically including treble damages, plus civil penalties of $5,500 to $11,000 for each of the false claims presented or caused to be presented;

    b.    Interest, attorney's fees and costs as allowed by law, and any and all further relief as the Court deems just and proper, and

    c.    Pursuant to Federal Rule of Civil Procedure 38, a trial by jury on all issues raised in its Complaint.

Respectfully submitted,

/s/ Zachary L. Taylor

Zachary L. Taylor
TAYLOR COUCH PLLC
130 Saint Matthews Avenue, Suite 301
Louisville, Kentucky 40207
ztaylor@taylorcouchlaw.com
(502) 822-2500
*Counsel for Relators Sparkman and Justice*